UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| C. M. on behalf of herself and as legal guardian and parent of Z. M., a minor individual,<br><br>       Plaintiffs,<br><br>  v.<br><br>INDEPENDENT SCHOOL DISTRICT OF BOISE CITY, NO.1 et al.,<br><br>       Defendant. | Case No. 1:15-CV-00141-EJL-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court in the above-entitled matter is the Defendants' Motion for Summary Judgment. (Dkt. 27.) The parties have filed their responsive briefing and the matter is now ripe for the Court's consideration. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from events occurring when Plaintiff Z.M. was a student attending Liberty Elementary, a school and subdivision of the Defendant, the Independent School District of Boise City (BSD). Z.M. has been diagnosed with Becker muscular dystrophy, epilepsy, gray matter heterotopias, subependymal hamartomas, cognitive disorder, organic brain syndrome, impulse control disorder, and adjustment disorder. (Dkt. 20 at ¶ 2.) During the 2011 school year, Z.M. experienced incidents of bullying allegedly based on his disability. (Dkt. 20 at ¶ 7.) On October 3, 2011, a comprehensive evaluation of Z.M. was conducted and an Individual Education Plan (IEP) was put in place for Z.M. at Liberty Elementary for the 2012-2013 academic year. (Dkt. 20 at ¶¶ 8-15.)

The Complaint alleges Z.M. continued to be bullied during the 2012-2013 and 2013-2014 academic years and that he was regressing from the goals in his IEP, had suicidal ideation, could not focus on school, and lacked the desire to attend school. The Complaint alleges that BSD failed to provide the services, supports, and accommodations required by the IEP. After incidents between Z.M. and other students in early to mid-September of 2013, Liberty Elementary suspended Z.M. and completed a Threat Assessment. Liberty Elementary also began the process of completing a Functional Behavioral Assessment (FBA).

Following a different incident involving Z.M. and another student on September 25, 2013, Z.M.'s parents confirmed that Z.M. would not be returning to Liberty Elementary because the bullying and disparate treatment Z.M. suffered at Liberty Elementary was so

MEMORANDUM DECISION AND ORDER

pervasive that Z.M. could no longer attend. (Dkt. 20 at ¶ 45.) Instead, Z.M. attended Idaho Virtual Academy for the 2013-2014 academic year.

In August of 2014, after a year at the Idaho Virtual Academy, Z.M. desired to return to a traditional academic setting. Z.M.'s parents attempted to enroll Z.M. at Garfield Elementary based on BSD's open enrollment policy. Garfield Elementary informed Z.M.'s parents that BSD policy requires students on an IEP to attend the school geographically nearest to their home; which was Liberty Elementary. Against their wishes, Z.M. was re-enrolled at Liberty Elementary for the 2014-2015 academic year. Because he was denied open enrollment at Garfield Elementary and to escape the disparate treatment and disability-based bullying he suffered at Liberty Elementary, the Complaint alleges, Z.M. attended Sage International School for the 2015-2016 academic year. (Dkt. 20 at ¶ 63.)

Between October of 2013 and February of 2015, Z.M.'s parents attempted to obtain records from Liberty Elementary which, they allege, were not provided or were provided late. During this time, Z.M.'s parents also contested the accuracy of and requested amendments to the final Threat Assessment on three occasions: December 20, 2013, October 21, 2014, and February 25, 2015. All of the requested amendments were denied. (Dkt. 20 at ¶¶ 52, 57.) On January 14, 2015, Z.M.'s parents requested, and were granted, a hearing on the BSD's decision denying their requests to amend the Threat Assessment. The BSD, however, rescinded the hearing before it occurred.

On March 27, 2015, Z.M.'s mother, Plaintiff C.M., filed a request for a due process hearing under the Individuals with Disabilities Education Act (IDEA). The request was denied on April 30, 2015 in a Memorandum Decision and Order by Hearing Officer Edwin L. Litteneker (Litteneker I). (Dkt. 20 at ¶ 64.) C.M. filed a second request for a due process hearing on May 8, 2015 which was denied on June 16, 2015 by Hearing Officer Litteneker based on res judicata (Litteneker II). (Dkt. 20 at ¶ 65.)

On April 28, 2015, prior to either Litteneker decision being issued, Plaintiffs initiated this action by filing a *pro se* Complaint against the BSD raising claims under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (§ 504), violation of civil rights under 42 U.S.C. § 1983, violation of IDEA, intentional infliction of emotional distress, request for injunction, and violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.* (Dkt. 1.) On June 10, 2015 Plaintiffs filed the First Amended Complaint *pro se*. (Dkt. 3.) Thereafter, Plaintiffs retained counsel who filed a Second Amended Complaint raising two causes of action for discrimination under Title II of the ADA and § 504 of the Rehabilitation Act. (Dkt. 20.)

Both causes of action raise allegations that BSD discriminated and acted with deliberate indifference with regards to Z.M. and denied him the benefits of its services, on the basis and because of his disability in at least nine specified ways including: the bullying Z.M. suffered, treating Z.M. differently from his peers, failing to provide Z.M. services, unilaterally lowering the IEP goals, denying a hearing prior to suspending, disparate manner in completing the Threat Assessment, making substantive decisions based on cost

MEMORANDUM DECISION AND ORDER

not necessity, untimely providing records and revoking the hearing to correct Z.M.'s records, and failing to permit Z.M. to enroll in a school of his choosing. (Dkt. 20 at ¶¶ 69, 76.) Defendants have filed this Motion for Summary Judgment arguing the Plaintiffs failed to exhaust administrative remedies and the claims are precluded by res judicata.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a completely failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[1]

---

[1] *See also,* Rule 56(3) which provides, in part:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's

MEMORANDUM DECISION AND ORDER

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

---

response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MEMORANDUM DECISION AND ORDER

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

---

response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

## ANALYSIS

**1.     Failure to Exhaust Administrative Remedies**

Defendants argue summary judgment should be entered because the Plaintiffs failed to exhaust their administrative remedies and because of a timing defect. (Dkt. 30 at 6.) Plaintiffs argue they properly exhausted their administrative remedies and they were not required to seek judicial review of the two final decisions rendered by Hearing Officer Litteneker. (Dkt. 28 at 2-9.)

### A.     IDEA Exhaustion

Defendants argue the Plaintiffs failed to exhaust their IDEA administrative remedies as to the § 504 and ADA claims. (Dkt. 27 at 9.) Plaintiffs maintain they have exhausted IDEA administrative relief by filing two due process complaints which were resolved on the merits in Litteneker I and II. (Dkt. 28 at 6-7.) Plaintiffs further argue they are not required to seek judicial review of those decisions before filing this civil action. (Dkt. 28 at 2-9.)

Under the IDEA, administrative exhaustion is required as to those claims for which the remedy sought could be brought under the IDEA or its functional equivalent. *Kelly O. v. Taylor's Crossing Public Charter Schl.*, No. 4:12-cv-00193-CWD, 2013 WL 4505579, at \*6 (D. Idaho Aug. 21, 2013); *see also Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 872 (9th Cir. 2011) *overruled on other grounds* by *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (*en banc*). Defendants' argue the Plaintiffs' § 504 and ADA claims are "the types of claims" dismissed in *Taylor's Crossing* and *Payne* and, therefore, should be

MEMORANDUM DECISION AND ORDER

dismissed in this case. (Dkt. 27 at 9.)[2] Those two cases considered whether the relief sought in the civil actions was also available to the claimants under the IDEA and, therefore, subject to the IDEA's exhaustion requirement. *See Kelly O.*, 2013 WL 4505579, at *9 (concluding the claimants were required to exhaust the IDEA administrative remedies and failed to do so); *Payne*, 653 F.3d at 874-878 (clarifying the proper method for resolving IDEA exhaustion cases and remanding the exhaustion question). Plaintiffs in this case do not contest that IDEA's exhaustion requirement applies to their claims. (Dkt. 28 at 3.) In fact, the parties agree that the Plaintiffs' § 504 and ADA claims are subject to the IDEA's exhaustion requirement. (Dkt. 27 at 6) (Dkt. 28 at 3.) The issue in this case, therefore, is whether Plaintiffs have in fact exhausted their administrative remedies under the IDEA.

Before Plaintiffs may file a civil action raising claims under the ADA or § 504 of the Rehabilitation Act, they must first exhaust the administrative remedies required under subsections (f) and (g) of the IDEA. *See Kelly O.*, 2013 WL 4505579, at *5; 20 U.S.C. § 1415(l). Section 1415(l) of the IDEA states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans

---

2 Defendants argue the Ninth Circuit uses an "injury-centered" approach to IDEA exhaustion in *Payne*. (Dkt. 30 at 5) (citing *Payne*, 653 F.3d at 874). In *Payne*, however, the Ninth Circuit rejected the "injury-centered" approach in favor of a "relief-centered" approach. *Payne*, 653 F.3d at 874. Applying this relief-centered approach, the Ninth Circuit acknowledged that "exhaustion is clearly required when a plaintiff seeks an IDEA remedy or its functional equivalent," and "exhaustion is required in cases where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of a FAPE to provide the basis for the cause of action (for instance, a claim for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, premised on a denial of a FAPE)." *Id.* at 875.

MEMORANDUM DECISION AND ORDER

>with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). Only § 1415(f) applies to this case and it provides that a claimant who has filed a due process complaint "shall have an opportunity for an impartial due process hearing" conducted by the appropriate state educational agency. 20 U.S.C. § 1415(f)(1)(A).[3]

As applicable here, § 1415(f) demands that the claimant file a due process complaint under subsection (b)(6) with the applicable local educational agency that is subject to an impartial due process hearing. 20 U.S.C. § 1415(f)(1)(A). Prior to the impartial due process hearing, a resolution session may be held. 20 U.S.C. § 1415(f)(1)(B). If the complaint remains unresolved following the resolution session, the impartial due process hearing is held consistent with the applicable procedures as set forth in subsection (f). Thereafter, the hearing officer issues a decision in accordance with § 1415(f)(3)(E).

In this case, Plaintiffs filed two requests for a due process hearing that are relevant to the claims. The first request was filed on March 27, 2015 (Case H-15-03-27) and the second on May 8, 2015 (Case H-15-05-08). (Dkt. 27, Exs. D, E.) Neither case was resolved during the resolution session. In both cases, Hearing Officer Litteneker considered the

---

[3] The parties agree that § 1415(g) does not apply here because Idaho has not provided for state-level appellate review. (Dkt. 28 at 5) (Dkt. 30 at 4); *see also* IDAPA 08.02.03.109.05.c.

MEMORANDUM DECISION AND ORDER

BSD's Motions to Dismiss or Alternative Motions for Summary Judgment without oral argument and issued decisions granting summary judgment in favor of BSD. (Dkt. 27, Exs. I, J.) The cases were dismissed with prejudice.

Based on this record, the Court finds Plaintiffs have satisfied the IDEA's exhaustion requirement. Litteneker I and II are final determinations from which Plaintiffs have no further administrative relief available to them under the IDEA. The Court further finds that judicial review of Litteneker I and II is not required in order for Plaintiffs to have exhausted their IDEA administrative remedies.[4] Nothing in § 1415(f) requires judicial review in order for Plaintiffs to have exhausted the administrative remedies under the IDEA. The Court finds Plaintiffs have satisfied the exhaustion requirement of § 1415(l).

### B.     Timing Defect

Plaintiffs filed the initial Complaint in this case *pro se* before either Litteneker I or Litteneker II had been issued. (Dkt. 1.) Defendants argue the claims raised in the Complaint are, therefore, premature or untimely because the Plaintiffs had not yet been "aggrieved" by any final adverse determination when they filed the Complaint. (Dkt. 30 at 2.) Defendants point to § 1415(l)'s exhaustion requirement, discussed above, and § 1415(i)(2) which states:

> **Right to bring civil action**
> **(A)    In general**
> Any party aggrieved by the findings and decision made under

---

[4] The Plaintiffs seem to merge the Defendants' arguments regarding "judicial review" which appears to go more towards their timing defect argument, i.e. "timely judicial review," as opposed to the exhaustion requirement argument. (Dkt. 27, 30.) The Court has addressed judicial review in both contexts for completeness.

MEMORANDUM DECISION AND ORDER

> subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.
>
> **(B)   Limitation**
> The party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows.

20 U.S.C. § 1415(i)(2). Idaho has adopted a 42 calendar day time limitation for such claims. IDAPA 08.02.03.109.05.g ("The hearing officer's decision shall be binding unless either party appeals the decision by initiating a civil action. The hearing officer's decision shall be implemented not later than fourteen (14) calendar days from the date of issuance unless an appeal is filed by a parent or adult student or the decision specifies a different implementation date. An appeal to civil court must be filed within forty-two (42) calendar days from the date of issuance of the hearing officer's decision."). Defendants argue both § 1415(i) and § 1415(l), as well as certain case law, requires that a civil action be filed after the hearing officer has issued a decision under § 1415(f) and within the applicable time limitation provided for by state law; here, forty-two days. (Dkt. 30 at 2.)

The Court has reviewed the record in this case and notes that since the filing of the initial *pro se* Complaint, a Second Amended Complaint was filed by retained counsel for Plaintiffs pursuant to a stipulation of the parties. (Dkt. 1, 19, 20.) The Second Amended

MEMORANDUM DECISION AND ORDER

Complaint is now operative pleading in this case and was filed after both Litteneker I and Litteneker II were decided. (Dkt. 20.) As determined above, the Litteneker decisions are now final determinations satisfying the exhaustion requirement. As such, any timeliness issue with regard to the filing of the initial *pro se* Complaint has since been remedied by the filing of the Second Amended Complaint by stipulation. For these reasons, the Court denies the Motion for Summary Judgment based on any timing defect.

### C.     Unexhausted Claims

In their reply brief, Defendants also argue the Plaintiffs failed to present any claims under § 504 or the ADA before the Hearing Officer and, therefore, those claims are "unexhausted" and may not be considered by this Court. (Dkt. 30 at 6.) The due process complaints were instead, Defendants contend, brought under the IDEA which is not the basis for any claim in the Second Amended Complaint.

The express language of § 1415(l) provides that claimants are not restricted or limited from bringing a civil action raising other claims seeking similar relief as that found in the IDEA so long as they exhaust the procedures under, as applicable here, subsection (f). As determined above, Plaintiffs have exhausted the procedures under subsection (f) and, therefore, are not precluded from now bringing their ADA and § 504 claims in this action. Further, the Court finds the Plaintiffs' claims here are the functional equivalent of the IDEA remedies sought in the due process hearings.[5]

---

5 Defendants' position on exhaustion concedes as much by arguing the Plaintiffs ADA and § 504 claims seek to "attain the functional equivalent of the remedy provided" for by the IDEA. (Dkt. 27 at 6.)
MEMORANDUM DECISION AND ORDER

The Claims taken up in Litteneker I and II involve the Plaintiffs' claims of a deprivation of Z.M.'s right to Free and Appropriate Public Education (FAPE) based upon the IEP in place in September 2013. (Dkt. 27, Ex. I at 2) (Dkt. 27, Ex. J at 5-7.) Specifically, in Litteneker I the Plaintiffs argue the Defendants improperly handled disciplinary actions taken against Z.M. in September 2013; the Defendants failed to timely and properly initiate appropriate assessments following Z.M.'s discipline; the Threat Assessment did not comply with IDEA and did not permit parent participation; and the Defendants failed to timely and appropriately conduct a FBA. (Dkt. 27, Ex. I at 2.) In Litteneker II, the Plaintiffs alleged the Defendants had violated IDEA by failing to implement Z.M.'s Behavioral Intervention Plan (BIP) and, in May of 2013, the Defendants lowered the IEP's benchmarks without parental agreement and failed to timely convene an IEP team meeting; and the Defendants failed to provide FAPE. (Dkt. 27, Ex. J at 5-7.)

The Second Amended Complaint in this case does not raise an IDEA claim. (Dkt. 20.) Instead, Plaintiffs seek damages for the alleged violations of § 504 and the ADA based upon the Defendants' reaction to the bullying; failure to provided services, supports, and accommodations required by Z.M.'s IEP and BIP; unilateral lowering of IEP goals; disciplinary actions and suspension of Z.M.; manner in completing the Threat Assessment; denial of Z.M.'s right to enroll in a school of his choosing; and Defendants' conduct with regard to Z.M.'s educational records. (Dkt. 20.)

The relief sought in these claims is the functional equivalent of the IDEA arguments raised before the Hearing Officer.[6] The Plaintiffs exhausted the administrative process with regard to these claims and, therefore, they are properly raised in this case. To the extent Defendants argument here challenges the substance of the claims, i.e., whether the claims raised in the Complaint articulate violations of ADA and § 504, that issue is not raised in this Motion.

**2.     Res Judicata**

---

6       Section 504 of the Rehabilitation Act provides, in relevant part: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

To establish a violation of Title II of the ADA, a plaintiff must show: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth*., 114 F.3d 976, 978 (9th Cir. 1997) (internal quotations omitted). To establish a violation of Section 504, a plaintiff must show: "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Id.* (internal quotations omitted). "[A] public entity can be liable for damages under § 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 935 (9th Cir. 2008); *see also Duvall v. County of Kitsap*, 260 F.3d 1124, 1135-36 (9th Cir. 2001) (holding that allegations of intentional discrimination or deliberate indifference are required to state a claim for damages under Section 504 or the ADA). A party seeking to recover damages under Section 504 or the ADA must show "something more" than a denial of FAPE under the IDEA. *Sellers by Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 529 (9th Cir. 1998).

MEMORANDUM DECISION AND ORDER

Defendants next argue the decisions by Hearing Officer Litteneker (Litteneker I and Litteneker II) preclude Plaintiffs' claims in this case under res judicata. (Dkt. 27 at 10-12.) Plaintiffs counter that their administrative exhaustion of their IDEA claims does not now render their ADA and § 504 claims barred in this action by res judicata. (Dkt. 28 at 9-12.) Defendants maintain that all of the allegations in the claims made here involve conduct occurring prior to the first due process hearing request and, therefore, were either resolved on the merits by the Hearing Officer and/or were claims that could have been raised in the prior proceedings. (Dkt. 30 at 7-8.)

"Claim preclusion, or res judicata, bars 'successive litigation of the very same claim' following a final adjudication on the merits involving the same parties or their privies." *Amadeo v. Principal Mut. Life Ins. Co.*. 290 F.3d 1152, 1159 (9th Cir. 2002) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) (citations omitted)). Res judicata serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). Res judicata "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The Supreme Court has explained the "general rule of res judicata":

> The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The

MEMORANDUM DECISION AND ORDER

> rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' ... The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

*C.I.R. v. Sunnen*, 333 U.S. 591, 597 (1948) (citation omitted).

Res judicata bars litigation in an action on "'any claims that were raised or could have been raised'" in a previous action. *Stewart v. United States Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (quoting *Owens v. Kaiser Found. Health Plan*, Inc., 244 F.3d 708, 713 (9th Cir.2001)). For res judicata to apply, there must be "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Id.* at 956 (internal quotations and citation omitted). A party cannot "avoid the bar of res judicata merely by alleging conduct by the defendant not alleged in [the] prior action or by pleading a new legal theory." *McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986). The "central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." *Owens*, 244 F.3d at 714 (citation and quotations omitted).

Res Judicata does not bar Plaintiffs' claims in this case. The two Litteneker decisions exhausted the administrative process as required by the IDEA before Plaintiffs could bring the claims in this case. 20 U.S.C. § 1415(l). Having exhausted their administrative remedies, the Plaintiffs may now bring their § 504 and ADA claims. Were it

MEMORANDUM DECISION AND ORDER

otherwise, i.e., if res judicata applied, Plaintiffs would have no opportunity to bring these claims before a court. That is to say, it would be impossible for a claimant to both exhaust their administrative remedies under the IDEA and also to bring a civil action raising ADA and § 504 claims as contemplated by §§ 1415(l), (i).[7] Such a result is inconsistent with the intent or purpose of res judicata because the claims in this case are not repetitious of claims previously decided by a court. Therefore, there is no unnecessary waste of judicial resources or burden on the Defendants of twice defending a lawsuit. For these reasons, the Court concludes the Plaintiffs' claims are not barred by res judicata.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Dkt. 27) is **DENIED**.

IT IS FURTHER ORDERED that the parties shall meet and confer to complete a litigation plan consistent with the direction provided in the Court's Litigation Order (Dkt. 23) and file the same with the Court on or before October 3, 2016.

Dated: **August 31, 2016**

Honorable Edward J. Lodge
United States District Judge

---

7 Defendants' own arguments make clear that IDEA exhaustion is required before a civil suit raising ADA or § 504 claims can be plead. (Dkt. 30 at 5) ("It is well established, and undisputed, that a plaintiff cannot file a civil suit for relief that would be available under the IDEA, even if pled under the ADA or Section 504, without first exhausting the administrative remedies available under the IDEA.")

MEMORANDUM DECISION AND ORDER